# SUPREME COURT.

In the Matter of the Application of the Department of Public Parks to Acquire Title to Certain Lands for a Military Parade Ground.

When the law transfers to another body the performance of certain duties, it conveys all the powers possessed by the former body, not expressly repealed.

A discretionary power to discontinue a proceeding instituted to acquire title to certain lands having been possessed by the mayor, aldermen and commonalty of the city of New York, provided the same be exercised before the confirmation of the report of the commissioners of estimate and assessment, is possessed by their successors, the commissioners of public parks.

*General Term, First Department, October* 30, 1874.

Appeal from order denying motion made to require the commissioners of estimate and assessment to show cause why they should not forthwith make their report and complete their proceedings in this matter.

*William R. Martin,* for appellants.

*George P. Andrews,* for respondent.

Daniels, *J.* — By chapter 628 of the Laws of 1871 power was conferred upon the officers comprising the board of the department of public parks of 'the city of New York, and the major-general commanding the first division of the national guard of the state, to lay out and establish, above Fifty-ninth street, a public square or place of such width, extent and direction as to them should seem most conducive to the public good, for the use of the first division of the national guard of the state for military encampments, parades, drills, reviews or other military evolutions or exercises.   The officers men-

tioned were required to cause a map, plan or survey, to be made, showing the location and extent of such square or place, which was to be certified by them and filed, and from that time the land selected was to become one of the public squares or places of the city of New York. The evidence presented to the court in support of the application made in this proceeding showed a compliance with these provisions of this statute.

This act did not prescribe the mode by which the title to the square or place should be acquired after the certifying and filing of the map. That was to be done by means of proceedings taken similar to those prescribed by section 6 of chapter 697, of the Laws of 1867; volume 2, Laws of 1871, 1372, section 2. That section required an application to be made to this court for the appointment of commissioners of estimate and assessment, within two years from the time of the filing of the map; and the proceedings taken for that purpose were required to be in conformity to the laws at that time in force for opening public squares, streets, avenues and roads in the city of New York (*Vol.* 2, *Laws of* 1867, 1752, *sec.* 6).

And by section 11 of chapter 200 of the Laws of 1871, the power to institute and carry them on was given to the commissioners of the department of public parks, when the land to be taken was situated north of Fifty-ninth street, as the land described in the map filed concededly was. By virtue of this authority an application was successfully made by such officers for the appointment of commissioners of estimate and assessment, and they entered upon the discharge of their duties pursuant to such appointment; but before any report was made by them, a resolution was adopted by the commissioners of public parks, discontinuing the proceedings instituted to acquire title to the land. This, it is now claimed on the part of the owners of the land included within the survey and map made, they had no power to do.

As they were neither divested of their title or possession by the survey and filing of the map, and by the appointment of commissioners of estimate and assessment, it is not readily perceived how they could possibly be injured by the discon-

tinuance of the proceedings taken to acquire their title; and, if they were not, then the order denying their motion affected no substantial right, and it was not appealable. But, as the decision of that point is not actually essential to the disposition of the case, it is unnecessary to give it any extended consideration.

By the laws then in force prescribing and regulating the proceedings to be taken by the mayor, aldermen and commonalty of the city for the acquisition of title to lands required for streets, roads, avenues and public squares in the city, the power to discontinue them, at any time previous to the confirmation of the report of the commissioners of estimate and assessment, was expressly given them; and they were allowed to do that without the leave of the court in which the proceedings should be pending (*Laws of* 1839, 185, *sec.* 7). As to their power in that respect, no ground for doubt or controversy existed. And, by the act providing for the making of a parade gound, it was, in effect, provided that similar proceedings should be taken, in all respects, for acquiring title to the necessary lands as the mayor, aldermen and commonalty had the right to institute to acquire title to streets, avenues, roads and squares, when the proceedings were carried on by them (*Chap.* 628, *Laws of* 1871, *sec.* 2; *chap.* 697, *Laws of* 1867, *sec.* 6).

Under these provisions, and that made by section 11 of chapter 290 of the Laws of 1871, the commissioners of the department of public parks were required to take the proceeding for the acquisition of the title in the name, and on behalf of the mayor, aldermen and commonalty of the city; and such proceedings were to be similar, in all respects, to those prescribed for the mayor, &c., when taken by them. The language of the last provision referred to upon this subject is particularly clear and explicit. It is, "that in and about the proceedings the board of commissioners shall have and possess all the powers, and perform all the duties, then by law conferred on and authorized to be performed by the mayor," &c. (*Vol.* 1, *Laws of* 1871, 571, *sec.* 11).

One of those powers was the right to discontinue the proceedings before the confirmation of the report of the commissioners of estimate and assessment. It was obviously provided for the purpose of relieving the city from proceedings of this nature, and the burdens in the end imposed by them, when they appeared to be unnecessarily or improvidently taken, and it was as proper for that purpose when the proceedings were taken by the commissioners of public parks as when they might be taken by the mayor, &c., of the city. The end and object to be attained were substantially the same in each instance, and the proceedings instituted to attain them were required to be similar in all respects. No change whatever was made in the mode of proceeding, but it was allowed to be instituted and carried on by the commissioners of the department of public parks, instead of the mayor, &c., of the city. The power and process for acquiring title remained the same, but it was to be instituted and carried on by different officers.

There is no foundation for the position that the power to discontinue was not vested in the commissioners. It was not necessary that it should have been in express terms given to them; for it was incidental to the proceedings they were expressly allowed to take and carry on, and as such, it inhered in and passed with the proceedings themselves to the commissioners of public parks. No new power was given to them, but simply that which, but for the transfer, the mayor, &c., would have been required to exercise. The commissioners had all the preceding authority over the subject, no more and no less; and as one of its qualifications, they possessed the power to discontinue the proceedings at any time before the confirmation of the report of the commissioners of estimate and assessment. That, in the exercise of their discretion, they have done, and for that reason the motion was properly denied, and the order appealed from should be affirmed, with ten dollars costs besides disbursements.

DAVIS, P. J., and BARRETT, J., concurred.